GREENFIELD, ADMR., APPELLANT, *v.* THE AETNA CASUAL-
TY & SURETY CO. ET AL., APPELLEES.
GREENFIELD ET AL., APPELLANTS, *v.* THE AETNA CASU-
ALTY & SURETY CO. ET AL., APPELLEES.

(Nos. 876 and 877—Decided May 4, 1944.)

*Mr. C. W. Elliott,* for appellants.
*Mr. Fred J. Schatzmann,* for appellees.

HILDEBRANT, J. These appeals are on questions of
law and fact from decrees in two cases, denying refor-
mation or, in the alternative in the second case, cancel-
lation of certain releases given in connection with a
case of wrongful death.

The two cases are by agreement submitted together
upon the record made below where most of the facts
are either agreed to through the pleadings or by stip-
ulation and the only witnesses being William Green-
field and Ruth Greenfield, the plaintiffs, whose testi-
mony is undisputed.

The first case seeks, in the first cause of action, to
reform a certain release executed by plaintiff, Wil-
liam Greenfield, on the ground of mutual mistake,
and, in the alternative in the second cause of action,
to reform because of inequitable conduct amounting to
misrepresentation or fraud.

The second case, wherein William and Ruth Green-

field, as individuals, next of kin, and sole heirs at law of their deceased son, are plaintiffs, seeks, in the first cause of action, cancellation of a release for mutual mistake, and, in the alternative in the second cause of action, seeks cancellation for inequitable conduct amounting to fraud or misrepresentation and also prays in the alternative for reformation if cancellation be not the proper remedy.

The 12-year-old son of the Greenfields, while riding his bicycle, was killed by striking his head against a truck of the Middletown Sand & Gravel Company, while the operator thereof, an employee of such company, driving in the same direction as the boy, was turning the truck across the path of the boy at the intersection of Bellemonte and Central avenues in the city of Middletown.

At the time of the death, The Aetna Casualty & Surety Company had issued a policy of insurance to the gravel company, undertaking to pay all damages due to negligent operation of the truck.

On October 15, 1936, the surety company, acting for itself and the insured company, offered in settlement of any claim against the gravel company, the amount of $384, equal to the undertaker's bill for burial of the boy, which offer was accepted. On October 16, 1936, William Greenfield, as administrator of the boy's estate, instituted the statutory probate proceedings for authority to accept the settlement which was approved and done according to law.

Thereupon, the administrator executed and delivered to the gravel company the following release:

"Know all men by these presents, that I, William Greenfield, administrator of the estate of Robert Greenfield, deceased, for the sole consideration of three hundred and eighty-four dollars and no/100 dollars, to me in hand paid by The Middletown Sand & Gravel

Company have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge the said The Middletown Sand & Gravel Company and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of bodily injuries and/or death, and/or damage to property resulting, or to result, from an accident to Robert Greenfield which occurred on or about the 18th day of September, 1936, by reason of a collision, between Robert Greenfield, who was riding a bicycle and a truck operated by Henry Judd, employee of the said The Middletown Sand & Gravel Company, at the corner of Bellemonte street and Central avenue, in the city of Middletown, Butler county, Ohio, and of and for all claims or demands whatsoever in law or equity, which I, my heirs, executors, administrators, or assigns can, shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

"It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

"In witness whereof, I have hereunto set my hand and seal this 22 day of October, 1936.

"In the presence of  William Greenfield,
"Agnes Lauderback  Administrator of the estate of
"J. P. Royer.  Robert Greenfield, deceased."

Contemporaneously with the execution of the foregoing release, the Greenfields, as individuals, joined in the execution and delivery of a similar release, as follows:

"Know all men by these presents, that we, William Greenfield and Ruth Greenfield, for the sole consideration of three hundred and eighty-four dollars and

no/100 dollars, paid to William Greenfield, administrator of the estate of Robert Greenfield, deceased, paid by The Middletown Sand & Gravel Company, have released and discharged, and by these presents or for myself, my heirs, executors, administrators and assigns, release and forever discharge the said The Middletown Sand & Gravel Company and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of bodily injuries and/or death, and/or damage to property resulting, or to result, from an accident to Robert Greenfield which occurred on or about the 18th day of September, 1936, by reason of a collision between Robert Greenfield, who was riding a bicycle and a truck operated by Henry Judd, employee of the said The Middletown Sand & Gravel Company, at the corner of Bellemonte street and Central avenue, in the city of Middletown, Butler county, Ohio, and of and for all claims or demands whatsoever in law or in equity, which I, my heirs, executors, administrators, or assigns can, shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

"It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

"In witness whereof, we have hereunto set our hands and seal this 22 day of October, 1936.

"In the presence of   William Greenfield,

"Agnes Lauderback

"J. P. Royer.          Ruth Greenfield."

Subsequently, the administrator sued the city of Middletown for damages, alleging the defective condition of the street to be the cause of death, and the city by answer sets up the releases as a defense.

126

William Greenfield, after testifying as to the alleged defective condition of the street, testified as to the settlement with the gravel company; that one Royer, adjuster for the surety company, contacted him about a settlement of any possible claim further investigation might develop against the gravel company; and that Royer, however, expressed the belief that said company was not liable.

Plaintiff William Greenfield stated he would gladly accept a settlement because he didn't feel justified by the facts in holding the gravel company responsible. Royer agreed to pay the amount of the funeral bill, provided the surety company approved, and described the payment as sympathy money. It appears both plaintiff William Greenfield and Royer viewed the case as one of a very doubtful claim against the gravel company and considered the settlement as insurance against a law suit, wherein the surety company was buying its peace rather than offering compensation for damages. Having obtained approval of the surety company, in about two weeks, Royer took plaintiffs before his own attorney who guided the parties through the appropriate probate procedure and prepared the releases herein involved, which were executed by the plaintiffs in the office of Royer's attorney. Plaintiffs did not read the releases nor were they read to them. These transactions occurred over a period of approximately a week and plaintiffs were not represented by an attorney. William Greenfield further stated that he did not know the contents of the releases until months later; that nothing was ever said by any of the parties about releasing any one other than the gravel company and its insurer; that the sole intent was not to release any one else; and that he has never received anything from the city of Middletown. It appears William Greenfield did not men-

tion his intention of suing the city. It also appears that William Greenfield was employed as a foreman in a factory, and that he and his wife were lifelong residents of Middletown where they had attended the public schools.

No evidence was offered by defendants.

Plaintiffs claim that the city is responsible by reason of the defective condition of its street; that the gravel company settled voluntarily, as neither party felt it was responsible; that it was the intention of both parties to release the gravel company only; that the execution of the broad printed form, without knowledge of its all-inclusive language, was a mutual mistake, that, therefore, the instrument should be reformed to conform to the facts and the agreement of the parties arrived at prior to its execution; and that the second release should likewise be reformed or cancelled.

Defendants deny any mutual mistake, fraud or misrepresentation, and claim plaintiffs are not entitled to the relief prayed for, because of no showing of mutual mistake, fraud or misrepresentation, and because of inexcusable negligence on the part of plaintiffs in the execution of the releases without reading them.

This court finds no fraud in the transaction.

While counsel for both parties have furnished the court voluminous briefs covering a wide range, the court feels that the application of a few general and well settled principles of the law of reformation and release will enable it to properly decide the cases.

In 35 Ohio Jurisprudence, 145, Section 2, ''reformation'' is defined as the remedy afforded by courts possessing equitable jurisdiction to the parties and the privies of parties, to written instruments which import a legal obligation to reform or rectify such instru-

ments whenever they fail, through fraud or mutual mistake, to express the real agreement or intention of the parties. It is further stated that equity will afford a remedy by way of reformation of a written instrument to make it conform to the real agreement or intention of the parties, when there is no adequate remedy at law. Equity reforms an instrument but does not make one, and before reformation may be had, it is essential to show that a definite intention on which the minds of the parties had met pre-existed the instrument in question and that the mistake or fraud ensued in its execution. 35 Ohio Jurisprudence, 169, Section 27, reads in part:

"The correction of mistakes is one of the peculiar jurisdictions of a court of equity, and it may be stated as a general principle that courts possessing and exercising general equity powers and jurisdiction will correct or relieve against mistakes by a decree ordering the reformation of an instrument into which the error or mistake has crept whenever it is clearly manifest that a mistake has been made, that all parties concerned intended otherwise, and that the probable effect of the mistake will be an injury to one of the parties interested, and its correction will be no wrong to either."

The record clearly shows that the surety company's objective in having its representative contact plaintiffs in the first instance was solely to obtain a release of its insured, the gravel company, and thereby purchase its peace from any possibility of litigation. Plaintiffs testified that their sole intent was to release only the gravel company. The probate proceedings aptly illustrate that the minds of the parties met on this one intention, and the only authority asked for or given was a settlement and release of the gravel company alone. Whatever happened after that during the re-

duction of the release of the gravel company to writing different from expressing that intent alone and expressing something more or something less, would be by way of mutual misunderstanding.

It appears to the court that the printed forms were used solely as a convenience and that neither party was conscious at the moment of the ineptness of the printed forms to accurately express the pre-existing agreement. Whatever unexpressed intentions were in the minds of the different parties, they had agreed to a release of the gravel company only and if the terms of the printed forms were too broad, they were both mistaken as to their accuracy. If it is urged that the minds of the parties never met because the surety company's representative intended the use of the written form and was familiar with the scope of its language, but didn't inform the plaintiffs thereof, the fact remains that he proposed to settle for the gravel company alone and plaintiffs made it clear that such was their sole intention, so that the agreement was confined to that alone at the time of reducing it to writing and it would be an admission of inequitable conduct to urge that the minds never met at that point. If the knowing and informed use of the printed forms containing language transcending the pre-existing agreement, would amount to inequitable conduct under the circumstances here, surely the court cannot be called upon to supply the inequity or iniquity to the releases by confirming them as mistakenly or inadvertently worded. The court cannot make a different contract for the parties, either by abortive reformation or refusal to reform a writing which fails to express the pre-existing agreement on which the minds did meet, thus maintaining a different written agreement than intended.

As to the negligence of the plaintiffs in limiting.

the releases, whatever superiority of position between the parties was held by defendants and the general rules of construction of contracts against the drawer thereof would apply.

In 35 Ohio Jurisprudence, 156, Section 12, it is stated:

"In view, however, of the fact that mistakes rarely occur in the absence of some negligence and of the further fact that to deny reformation of a contract would often lead to injustice, the courts not only hold, but seem disposed to give the fullest scope, to the rule that negligence in executing a contract which is, under the circumstances, excusable will not prevent reformation to make the contract conform to the intention of the parties."

Under all the circumstances here, the fact that plaintiffs relied on defendants to prepare proper and accurate releases of the gravel company only and executed the same without reading them, the court deems excusable, since refusal of reformation here would lead to injustice to plaintiffs and the granting of the relief in no wise affects the status of the gravel company and its insurer.

45 American Jurisprudence, 710, Section 51, reads in part:

"Courts of equity will restrict a general release to the thing or things intended to be released. As on a release of all demands, when some particular demand was in view, the court of chancery will not allow the releasee to take advantage of the general words to defeat the collection of a demand not then in the minds of the parties. So, too, a court of equity will reform contracts in all cases, on a proper showing that they were so drawn as not to express the intention of the parties, but not where a release was given under a

manifest misapprehension of the legal effect of it in relation to the other obligors.''

In view of the foregoing the court considers it unnecessary to comment upon other points referred to in the briefs.

A decree may be presented in each case, reforming the instruments in accordance with the prayer of the petition.

*Decrees accordingly.*

Ross, P. J., and MATTHEWS, J., concur.