OPINION
{¶ 1} Plaintiff-appellant Starman, Inc. appeals from the November 16, 2004, Decision and Entry from the Ashland County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Jaftak Realty Investments, Ltd. while denying plaintiff-appellant Starman, Inc.'s Motion for Summary Judgment. Plaintiff-appellant Starman, Inc. also appeals from the November 16, 2004, Opinion and Judgment Entry of the Ashland County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Gary Dubin.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Starman, Inc. was owned and operated by Anthony Manson, its President. Manson was a businessman who acquired, managed and sold mobile home parks, motels and farm land in Ohio and Pennsylvania.
 {¶ 3} On or about September 1, 2001, a "Lease Agreement and Option Agreement to Purchase Property" (hereinafter "lease/option agreement") was entered into by and between Anthony Manson, Trustee, Age Management Company, Starman, Inc. and Frances B. Manson, as lessor or grantor, and appellee Jaftak Realty Investments, Ltd., as lessee or grantee. Pursuant to the terms of the same, which was prepared by Manson's counsel and signed on September 12, 2001, appellee Jaftak leased five mobile home parks and three motels owned by Manson and was given the option to purchase the same after Manson's death. John Flask, a managing member of appellee Jaftak, negotiated the lease/option agreement with Manson and Manson's attorney, appellee Gary Dubin. The lease/option was structured in such a manner that appellee Jaftak could exercise its option to purchase any one of the mobile home parks (except Meadowbrook) and any two motels per year until after Manson's death. However, on September 1, 2001, which was prior to the actual sale and transfer of title, exclusive control of the properties was transferred to appellee Jaftak.
 {¶ 4} The lease/option agreement also set forth an allocated purchase price for each property. The negotiated purchase price for the Starman Motel, as set forth in the lease/option agreement, was $120,000.00 out of the $3.23 million total for all of the properties. While the lease/option agreement stated that the legal description of the properties was "set forth in Exhibit `A', which exhibit is attached to and made part of this Lease", no legal description was attached to the lease/option agreement.
 {¶ 5} After the lease/option agreement was executed, appellee Jaftak hired Northstar Title Services, LLC (also referred to as "North Star") to issue a title insurance policy. Because, as is stated above, the lease/option agreement only identified the properties by name and did not include legal descriptions for the same, John Flask, appellee Jaftak's managing member, obtained permanent parcel numbers for all eight parcels from Anthony Manson and then provided the same to Northstar Title.
 {¶ 6} After Anthony Manson died in October of 2002, appellee Jaftak exercised its option to purchase all of the properties. At the closing on April 11, 2003, appellant's representative, Frances Manson, who became President of appellant Starman, Inc. after Anthony Manson's death, signed the documents required to transfer title to the properties to appellee Jaftak. One of the documents signed by Frances Manson was a general warranty deed conveying title to 1120 U.S. Highway 250 N. in Ashland, Ohio, which is the Starman Motels' mailing address, to appellee Jaftak. In addition to the Starman Motel, the deed also transferred title to appellee Jaftak to approximately 65 acres of land and a barn located adjacent to the Starman Motel.
 {¶ 7} Thereafter, on November 24, 2003, appellant Starman, Inc. filed a complaint in the Ashland County Court of Common Pleas against appellees Jaftak and Gary Dubin. Appellant, in its complaint, alleged, in relevant part, as follows:
 {¶ 8} "12. Title to the Starman Motel Plot was transferred by a General Warranty Deed dated April 11, 2003 [to appellee Jaftak]. The General Warranty Deed stated the property to be transferred was:
 {¶ 9} "(See Exhibit `A', attached hereto and made a part hereof.) Street address 1120 U.S. Highway 250 N., Ashland, Ohio 44805.
 {¶ 10} "13. Exhibit A to the General Warranty Deed, however, was an incorrect legal description of the property intended to be sold/purchased. The legal description included approximately 65 acres of additional property adjacent to the Starman Motel Plot (hereinafter `Adjacent Plot'), including the Corner-Barn Plot.
 {¶ 11} "14. Upon realizing the error, Starman contacted Jaftak and requested the adjacent property be transferred back to Starman.
 {¶ 12} "15. Jaftak refuses to return the property."
 {¶ 13} Appellant specifically sought reformation of the lease/option agreement and general warranty deed based on mutual mistake of fact. Appellant, in its complaint, also alleged that appellee Jaftak was unjustly enriched by the alleged mutual mistake of fact. In addition, appellant, in its complaint, also alleged that Gary Dubin, its former attorney, had committed legal malpractice by attaching the wrong legal description for the Starman Motel to the general warranty deed transferring title to the same to appellee Jaftak, causing appellant to lose legal title to the barn and approximately 65 acres. On January 23, 2004, appellee Jaftak filed an answer and counterclaim. Appellee Jaftak, in its counterclaim, sought recovery of certain rental income generated from the Starman Motel property that appellant had collected.
 {¶ 14} Subsequently, on June 1, 2004, appellees Jaftak and Dubin filed Motions for Summary Judgment. Appellant, on June 2, 2004, also filed a Motion for Summary Judgment. On June 22, 2004, appellee Jaftak filed a Motion to Strike appellant's Motion for Summary Judgment on the following grounds:
 {¶ 15} "1. Starman's motion for summary judgment is not properly before the Court inasmuch as it was filed after the June 1, 2004, deadline for filing dispositive motions;
 {¶ 16} "2. The exhibits attached to Starman's motion for summary judgment consist of unauthenticated, uncertain documents that have not been incorporated by reference into a properly framed, sworn affidavit; and,
 {¶ 17} "3. The exhibits attached to Starman's motion for summary judgment consist of inadmissible hearsay which cannot be considered by the Court in deciding whether to grant summary judgment."
 {¶ 18} As memorialized in a Decision and Judgment Entry filed on November 16, 2004, the trial court granted appellee Jaftak's Motion for Summary Judgment on appellant's claims and on appellee Jaftak's counterclaims while denying that filed by appellant Starman. The trial court also denied the Motion to Strike filed by appellee Jaftak as moot. In a separate Opinion and Judgment Entry filed on the same day, the trial court granted appellee Dubin's Motion for Summary Judgment.
 {¶ 19} Appellant now raises the following assignments of error on appeal:
 {¶ 20} "I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT STARMAN, INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING CLAIMS AGAINST DEFENDANT-APPELLEE JAFTAK REALTY INVESTMENTS, LTD.
 {¶ 21} "II. BY GRANTING SUMMARY JUDGMENT IN FAVOR OF JAFTAK REALTY INVESTMENTS, LTD. REGARDING THE COUNTERCLAIM, THE TRIAL COURT FAILED TO COMPLY WITH CIVIL RULE 56(C), FAILED TO VIEW THE FACTS IN STARMAN, INC.,'S FAVOR, IGNORED TESTIMONY AND EVIDENCE CONTRARY TO ITS OWN FACTUAL FINDINGS, AND WEIGHED THE EVIDENCE IMPROPERLY.
 {¶ 22} "III. BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE GARY DUBIN, THE TRIAL COURT FAILED TO COMPLY WITH CIVIL RULE 56(C), FAILED TO VIEW THE FACTS IN STARMAN, INC.'S FAVOR, IGNORED TESTIMONY AND EVIDENCE CONTRARY TO ITS OWN FACTUAL FINDINGS, AND WEIGHED THE EVIDENCE IMPROPERLY."
 {¶ 23} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 24} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Further, trial courts should award summary judgment with caution. "Doubts must be resolved in favor of the non-moving party." Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 25} It is pursuant to this standard that we review appellant's assignments of error.
 I, II {¶ 26} Appellant, in its first two assignments of error, argues that the trial court erred in granting appellee Jaftak's Motion for Summary Judgment on appellant's complaint and on appellee Jaftak's counterclaim while denying the Motion for Summary Judgment filed by appellant. We disagree.
 {¶ 27} As noted by the trial court in its November 16, 2004, Decision and Entry, the critical issue in the case sub judice is whether appellee Jaftak is entitled to summary judgment on appellant's claim for reformation of the lease/option agreement or general warranty deed due to mutual mistake of fact. As is stated above, appellant contends that Anthony Manson never intended to sell the approximately 65 acres of adjacent land and barn as part of the sale of the Starman Motel and that appellee Jaftak never intended to purchase the same as part of such sale. On the basis of such alleged mutual mistake, appellant contends that it is entitled to reformation of the lease/option agreement or deed.
 {¶ 28} The reformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties. Greenfield v. Aetna Cas. Sur. Co. (1944),75 Ohio App. 122, 128, 61 N.E.2d 226. Reformation of a contract based on mutual mistake is proper when the parties made the same mistake and understood the contract as the party seeking reformation alleges. Hastings Mutual Insurance Co., v. Warnimont (Feb. 15, 2001), Hancock App. No. 5-2000-22 at 3, 2001-Ohio-2148, citingSnedegar v. Midwestern Indemn. Co. (1988), 44 Ohio App.3d 64,69, 541 N.E.2d 90.
 {¶ 29} "Likewise, reformation of a deed is available upon a showing that both parties were mistaken as to what was being conveyed. Stewart v. Gordon (1899), 60 Ohio St. 170,53 N.E. 797. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence. Frate v.Rimenik (1926), 115 Ohio St. 11, 152 N.E. 14, paragraph one of the syllabus. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118." Music v. Sash Storm, Inc., Allen App. No. 1-01-142, 2002-Ohio-1403 at 2.
 {¶ 30} Appellant, in its Motion for Summary Judgment before the trial court, specifically cited to the following evidence in arguing that there was a mutual mistake as to the transfer of title to the barn and the 65 acres and that appellant was entitled to reformation:
 {¶ 31} (1) On two occasions after the lease/option agreement was executed, Anthony Manson, appellant's President, told his accountant, Jan Bartczak,[1] that he still owned three parcels of land in Ashland County and Bartczak contemporaneously recorded Manson's statements in her paperwork. Appellant, in support of its Motion for Summary Judgment, attached an affidavit from Bartczak in which she stated that on or about March 21, 2002, Manson told her that appellant Starman still owned three parcels of land in Ashland, Ohio, and that at a face-to-face meeting on or about September 16, 2002, Manson again told her that appellant Starman still owned three parcels of land near the Starman Motel.
 {¶ 32} (2) Frances Manson, Anthony Manson's wife, testified during her deposition that, several times after the lease/option agreement was executed, Anthony Manson drove to inspect the Ashland properties and told her that the barn and approximately 65 acres adjacent to the Starman Motel were not being sold to appellee. Frances Manson's deposition was filed with the trial court.
 {¶ 33} (3) A lease purchase contract was entered into in January of 1992 between appellant Starman and Anthony Manson giving Thomas Dilgard the right to lease the barn and 3 [of the 65] acres and granting him an option to purchase the same. Appellant attached the lease purchase contract to its Motion for Summary Judgment as well as an undated written document that Anthony Manson purportedly put in his files indicating that the barn and 3 acres were not being sold because Thomas Dilgard had a "first right of refusal."
 {¶ 34} (4) James Emmons, in his May 26, 2004, affidavit, which was attached to appellant's Motion for Summary Judgment, stated, in relevant part, as follows:
 {¶ 35} "2. In or about 1970, Anthony Manson (`Manson') leased to me approximately 70 acres of property (`Emmons Lease'). The property is located at the northeast corner of the intersection U.S. Highway 250 and Township Road 1136 and also immediately west of the Starman Motel (collectively `Leased Property.')
 {¶ 36} "3. The Emmons Lease was oral and provided that, as consideration for the right to farm the Leased Property, I would pay Manson $5000 per year.
 {¶ 37} "4. The Emmons Lease remains in full force and effect. I continue to farm the leased property and make payments to Anthony Manson's family."
 {¶ 38} Moreover, appellant, in its Motion for Summary Judgment, also noted that after appellee Jaftak leased the subject properties, Anthony Manson continued insuring the barn for fire loss and that, after paying $120,000.00 to purchase the Starman Motel property, the same was appraised by appellee Jaftak for over $380,000.00 months after the transfer.
 {¶ 39} As an initial matter, we note that the parties dispute whether such evidence is admissible or whether as appellee alleges, such evidence is inadmissible hearsay and/or improper under Civ. R. 56. However, even assuming, as the trial court did, that all of the above evidence cited by appellant was admissible, we concur with the trial court that it does not establish, by clear and convincing evidence, that there was a mutual mistake as to what was being conveyed. As noted by the trial court, "that evidence merely indicated that Plaintiff may have made a mistake." (Emphasis added).
 {¶ 40} Moreover, the fact that appellee Jaftak only paid $120,000.00 for property that was worth considerably more may indicate that appellee never intended to buy the property, but does not necessarily indicate that conclusion. Another rational conclusion is that appellee made a good business deal. Therefore, the price paid, when viewed in light of all the information before the court on summary judgment, does not establish by clear and convincing evidence that there was a mutual mistake.
 {¶ 41} In addition, there is no evidence that appellee Jaftak was mistaken as to what it was acquiring. John Flask, a managing member of appellee Jaftak, stated, in relevant part, in his affidavit which was attached to appellee's Motion for Summary Judgment:
 {¶ 42} "5. On behalf of the Company, I negotiated the lease and subsequent purchase of five mobile home parks and three motels from an individual by the name of Tony Manson, or entities controlled by him;
 {¶ 43} "6. It was my belief that the Company was acquiring all of Tony Manson's properties as listed in Exhibit `A' to the Lease/Option Agreement including the Starman Motel located in Ashland, Ohio;
 {¶ 44} "7. I believed that Jaftak was acquiring all of Starman, Inc.'s property located in Ashland County, Ohio;
 {¶ 45} "8. I believed that Jaftak was acquiring the barn located directly north of the Starman Motel and I, on behalf of the company, decided not to insure the barn for property damage purposes in September 2001, when we took control of the Starman Motel property;
 {¶ 46} "9. At the time of the execution of the Lease/Option Agreement and to this day, I believe(d) that Jaftak was acquiring the vacant land located on the east side of Route 250 across from the Starman Motel in Ashland County, Ohio;
 {¶ 47} "10. At the time of the execution of the Lease/Option Agreements and to this day, I believe(d) that Jaftak was acquiring the vacant land located behind or to the west of the Starman Motel; and, . . ."
 {¶ 48} Furthermore, Flask, in his deposition, stated in relevant part when asked for a description of the transaction with Anthony Manson:
 {¶ 49} "A. Right. Yes. In what regard? I mean, how do you want me to answer? I mean we bought — it was basically a package deal. Tony Manson said you were going to buy all of these or you're buying one. I mean, it was an all or nothing kind of deal.
 {¶ 50} "Q. All or nothing?
 {¶ 51} "A. Yes. We wanted his park. Everybody wanted his park in Ashland. It's called Meadowbrook. It was worth about a million seven and he had gotten many offers for a million seven but nobody wanted to buy all the other things that he had so. . . ." Deposition of John Flask at 8-9.
 {¶ 52} As is stated above, while appellant points to the fact that, after the lease/option agreement was executed, Anthony Manson insured the barn for loss as evidence of mutual mistake, John Flask, in his affidavit, stated that he decided not to insure the barn after the lease/option was executed. Whitney Painting, the insurance agent for both appellee Jaftak and Anthony Manson, testified during his deposition that "Mr. Flask just did not choose to insure [the barn] because of the condition . . . he said we don't need to insure the barn because it is going to be razed . . . It is just not in a condition that we like and it serves no purpose to use, so the barn will be removed." Deposition of Whitney Painting at 27.
 {¶ 53} In short, upon our review of the evidence, we cannot say that the trial court erred in granting summary judgment to appellee Jaftak on appellant's complaint for reformation since, construing the evidence in favor of appellant, there are no genuine issues of material fact and reasonable minds could not differ regarding whether or not there was a mutual mistake of fact. Since there is no evidence of mutual mistake of fact, appellant is not entitled to reformation of the lease/agreement and/or deed.
 {¶ 54} We also find that the trial court did not err in granting appellee's Motion for Summary Judgment on appellant's unjust enrichment claim. In order to recover under a theory of unjust enrichment, a plaintiff must prove by a preponderance of the evidence: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) the defendant was retaining that benefit under circumstances where it would be unjust for him to retain that benefit without payment. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183, 465 N.E.2d 1298. See also Hummel v. Hummel (1938),133 Ohio St. 520, 525, 14 N.E.2d 923.
 {¶ 55} As noted by the trial court in its decision, there is no evidence that appellee Jaftak "made a mistake or had knowledge that it was receiving any unjust benefit." Both parties, in the case sub judice, were of relatively equal bargaining power[2] and both were represented by counsel in negotiating the lease/option agreement and the purchase price for the property.
 {¶ 56} Finally, we further find that the trial court did not err in granting appellee Jaftak's Motion for Summary Judgment on its counterclaim. As is stated above, appellee Jaftak, in its counterclaim, alleged that appellant had received and converted rental income that was due to appellee Jaftak. Appellant, in its response to appellee Jaftak's Request for Admission No. 9. admitted that it had received income from a farmer and sign company for use of "portions of the Starman Plot, the Corner-Barn Plot, and/or Adjacent Plot after September 11, 2001." Since, as is stated above, appellant's claims for reformation and unjust enrichment lack merit, we find that appellee Jaftak was entitled to summary judgment on its counterclaim.
 {¶ 57} Based on the foregoing, we find that the trial court did not err in granting appellee Jaftak's Motion for Summary Judgment and in denying appellant's Motion for Summary Judgment.
 {¶ 58} Appellant's first and second assignments of error are, therefore, overruled.
 III {¶ 59} Appellant, in its third assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee Gary Dubin. We disagree.
 {¶ 60} Appellant, in the case sub judice, filed a legal malpractice complaint against appellee Dubin, alleging that "[i]n his capacity as [appellant] Starman's attorney, [appellee] Dubin was negligent in failing to properly verify and describe the property Starman intended and agreed to sell and transfer to [appellee] Jaftak" and that "Dubin's legal services in connection with the preparation of the Jaftak option and sale-purchase fell below the applicable standard of care."
 {¶ 61} In order to prevail on a claim for legal malpractice, a plaintiff must show: (1) the attorney owed a duty or obligation to the plaintiff; (2) there was a breach of duty or obligation and the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting in damage or loss. Vahila v.Hall (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164.
 {¶ 62} At issue in this case is whether appellee Dubin breached his duty to appellant in preparing the legal documents relating to the September 1, 2001 lease/option agreement between appellant and appellee Jaftak. Appellant specifically contends that appellee Dubin breached his duty to appellant by failing to include a proper legal description of the property in the lease/option agreement, by failing to confirm with Frances Manson the property to be transferred, and by blindly relying on a legal description drafted by Northstar Title. Appellant notes that appellee Dubin had provided legal services to appellant in the past in regard to the Starman Motel and, at that time, the motel property consisted of the building and one acre of land as opposed to an additional 65 acres of farmland.
 {¶ 63} Appellee Dubin, who had represented both Anthony Manson personally and his various business interests for over twenty years, stated, in relevant part, as follows in his affidavit, which was attached to his Motion for Summary Judgment:
 {¶ 64} "6. In October 2000, Tony asked me to prepare a letter of intent to John A. Flask, a prospective purchaser of the eight (8) properties. There were three primary conditions for the lease/option to purchase transaction as related to me by Tony Manson:
 {¶ 65} "a. All eight (8) properties had to be sold as a package;
 {¶ 66} "b. The option to purchase could not be exercised until after Tony's death; and
 {¶ 67} "c. Estate tax considerations were important to the structure of any sale.
 {¶ 68} "7. Ultimately, John Flask reached an agreement with Tony Manson on a price for the transaction. Thereafter, I was asked by Tony Manson to prepare the necessary paperwork to effectuate the agreement. As to the identity of the properties involved, Tony Manson gave me a list of the eight (8) properties with addresses for each.
 {¶ 69} "8. I worked with Jaftak's counsel, Jim Mackey, in putting together the necessary legal documents. Consistent with my client's intentions, I prepared a lease/option agreement and attached the list of the eight (8) properties and addresses given to me by my client as an exhibit to the agreement.
 {¶ 70} "In addition, I gave the list of properties to Jim Mackey, counsel for Jaftak. It was agreed between the parties that Jaftak would order the necessary title work. I learned from Jim Mackey that Tony Manson had supplied permanent parcel numbers for the various properties directly to John Flask. I also learned from Jim Mackey that Mackey ordered the title work based upon the information given by Tony Manson to me and information given by Tony Manson directly to Mackey's client, John Flask.
 {¶ 71} "10. Tony Manson knew or should have known that Jaftak's counsel ordered the title work because I sent North Star Title's bills for the title work to Tony Manson for payment to North Star once the bills were sent to me by Mackey.
 {¶ 72} "11. At no time whatsoever did Tony Manson tell me that certain parts of the property comprising the Starman Motel property were not to be transferred to Jaftak, Inc. Specifically, Tony Manson never told me that a 65 acre parcel owned by Starman, Inc. across the street from the Starman Motel was to be excluded from the transaction. Moreover, Tony Manson never told me that the only property to be transferred to Jaftak was a one (1) acre parcel on which the Starman Motel was supposedly located.
 {¶ 73} "12. After Tony's death, Jaftak exercised the option in a timely manner. North Star updated the title work and documents consistent with my client's intentions were prepared and signed by all parties on April 11, 2003. I prepared the General Warranty Deed based upon a legal description that had been provided to me by Jaftak's counsel. Jaftak's counsel had, in turn, obtained the legal description from North Star Title. At the time that I attached the legal description to the General Warranty Deed, I believed that the legal description accurately described the property that my client, Tony Manson, intended to transfer to Jaftak, Inc. as part of the Starman Motel purchase.
 {¶ 74} "13. "After Tony's death on October 3, 2002, and before the deed for the Starman Motel property was filed for record on May 1, 2003, no one affiliated with Starman, Inc., including Tony's wife, daughter, son and accountant, who was closely involved with the transaction, ever told me that the property being transferred to Jaftak excluded a 65 acre parcel across the street from the motel and/or only included a one (1) acre parcel on which the motel was supposedly located.
 {¶ 75} "14. The first I learned of a supposed error in the legal description attached to the Warranty Deed was after May 1, 2003, and before suit was filed against me for legal malpractice.
 {¶ 76} "15. I have recently reviewed the legal description to the General Warranty Deed for the Starman Motel property filed for record on May 1, 2003. The legal description attached to the filed General Warranty Deed was not prepared by me. Someone from North Star Title, or someone on their behalf, removed the legal description I attached to the deed and substituted another legal description between April 11, 2003 and May 1, 2003. This substitution was done without my knowledge, consent or approval."[3]
 {¶ 77} The evidence is undisputed that Anthony Manson provided appellee Dubin with the names and addresses of the eight properties that were the subject of the lease/option agreement and that Anthony Manson himself provided the same information and also the permanent parcel numbers to John Flask, appellee Jaftak's managing member. Flask, in turn, then provided the same to the title insurance company. The description that Anthony Manson provided included the 65 acres. There is no evidence that Anthony Manson ever told appellee Dubin that the 65 acres was not included in the sale to appellee Jaftak.
 {¶ 78} In short, we find that reasonable minds could not conclude that appellee Dubin committed legal malpractice.
 {¶ 79} Appellant's third assignment of error is, therefore, overruled.
 {¶ 80} Accordingly, the judgment of the Ashland County Court of Common Pleas is affirmed.
By: Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Ashland County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Bartczak provided business and tax related services to appellant Starman and to Anthony Manson.
[2] As noted above, Anthony Manson was an experienced businessman.
[3] Appellants, in their brief, state the substituted legal descriptions prepared by Northstar "were substantially the same as the one Dubin attached."