OPINION *Page 2 
{¶ 1} Appellant, Glenn E. Fry ("Glenn"), appeals the July 18, 2006 judgment of the Common Pleas Court of Logan County, Ohio ordering judgment in favor of Appellee, Vladimir "Friday" Dworetsky, administrator of the Estate of James Dworetsky by denying Glenn's claim for reformation of the deed, awarding damages for unpaid rent in the amount of six hundred dollars a month for fourteen months ($8,400.00) to the Estate, and the amount of six hundred dollars a month following July 1, 2006 until the Estate has restitution and possession of the premises at issue in this case.
 {¶ 2} On August 1, 2003, Glenn transferred his real estate and house located at 9661 County Road 5 North, Rushsylsvania, Ohio to his friend, James Dworetsky ("James"). The property encompasses approximately 50 acres, consisting mostly of woods with a stream. The conveyance of the property from Glenn to James was by General Warranty Deed. Glenn did not dispute any aspect of the General Warranty Deed. The purchase price for the sale of the property was $68,500.00 which was below the market value of the property which was approximately $150,000.00. *Page 3 
 {¶ 3} Following the sale of the property, Glenn continued to live in the house on the property without paying rent to James. Glenn lived alone in the house until James moved in with him in August of 2004. The two remained roommates from August 2004 until the end of March 2005. On March 28, 2005, James died as a result of an automobile accident.
 {¶ 4} It is undisputed that Glenn and James were close, personal friends. James was the same age as Glenn's sons and they had grown up together. Both, Glenn and James, shared a common love for the outdoors and a desire to preserve the wooded portions of the 50 acre property in its natural state. Glenn was concerned with the prospect of the property being subdivided into separate parcels and developed for sale at the highest profit.
 {¶ 5} Glenn claims that he and James had an underlying verbal agreement that Glenn could live on the premises for the remainder of his life in exchange for the below market value sale of the property. Specifically, when Glenn was asked how he arrived at the price of the property, he testified:
 I wanted to make it so that Jim [James] could afford to buy it. That was the big thing. I didn't want to sell to anybody else. I didn't — even my sons. Jim [James] was my best friend. I wanted him to have it.
 {¶ 6} On May 4, 2005, the Estate commenced this lawsuit by filing a forcible entry and detainer action against Glenn in the Bellefontaine Municipal Court. The forcible entry and detainer action arose from Glenn's unauthorized *Page 4 
possession of real estate purchased by James on August 1, 2003. The Municipal Court Judge filed a judgment entry transferring the case to the Court of Common Pleas of Logan County, Ohio based upon Glenn's counterclaim requesting reformation of the deed for the subject sale to include a reservation of an alleged life estate.
 {¶ 7} Numerous pleadings and amendments were filed by both parties. Both parties also moved for summary judgment. Both motions were denied summary judgment based upon existing issues of material fact. The right to a jury trial was waived by the parties and on, June 29, 2006, a bench trial was conducted before the Court of Common Pleas of Logan County, Ohio. Both parties presented their respective cases to the trial court in the form of extensive testimony from twelve witnesses and the introduction of multiple exhibits. The parties entered into seventeen stipulations, filed on June 27, 2006, which were accepted by the trial court and agreed to on the record.
 {¶ 8} On July 7, 2006, the trial court issued its decision holding that Glenn failed to satisfy his burden to establish a mutual mistake by clear and convincing evidence. The trial court further held that Glenn failed to come to court with clean hands and failed to exercise prudence with respect to his alleged life estate. In this decision, the trial court articulated the factual basis supporting its determination prior to summarizing the evidence both for and against the finding of a mutual *Page 5 
mistake. The trial court awarded the Estate damages for past rent in the amount of six hundred dollars per month from May 1, 2005 to July 1, 2006 ($8,400.00), but rejected the Estate's demands for punitive damages and attorney fees. The trial court subsequently adopted the Estate's proposed Judgment Entry on July 18, 2006.
 {¶ 9} On August 2, 2006, Glenn filed a notice of appeal raising the following assignment of error:
 THE LOWER COURT ABUSED ITS DISCRETION IN FAILING TO FIND THAT DEFENDANT HAD PROVEN A MUTUAL MISTAKE BY CLEAR AND CONVINCING EVIDENCE RELATING TO THE RESERVATION OF A LIFE ESTATE HEREIN.
 {¶ 10} Glenn alleges in his sole assignment of error that the trial court abused its discretion in failing to find that he had proven a mutual mistake by clear and convincing evidence relating to the reservation of a life estate. He claims that the trial court should modify the deed by the means of reformation due to a mutual mistake by he and James.
 {¶ 11} The reformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties. Greenfield v. Aetna Cas. Sur. Co. (1944),75 Ohio App. 122, 128, 61 N.E.2d 226. Reformation of a contract based on mutual mistake is proper when *Page 6 
the parties made the same mistake and understood the contact as the party seeking reformation alleges. Hastings Mut. Ins. Co., v.Warnimont (Feb. 15, 2001), Hancock App. No. 5-2000-22 at 3, 2001-Ohio-2148, citing Snedegar v. Midwestern Indemn. Co. (1988),44 Ohio App.3d 64, 69, 541 N.E.2d 90.
 {¶ 12} Likewise, reformation of a deed is available upon a showing that both parties were mistaken as to what was being conveyed.Stewart v. Gordon (1899), 60 Ohio St. 170, 53 N.E. 797. The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence. Frate v. Rimenik (1926), 115 Ohio St. 11,152 N.E. 14, paragraph one of the syllabus. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118.
 {¶ 13} The trial court is in the best position to view the witnesses and observe their demeanor when he or she weighs the credibility of the offered testimony; therefore, there is a presumption that the factual findings of the trial court are correct. Star Bank Natl. Assn. v.Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731, 744. Therefore, an appellate court may not substitute its judgment for that of the trial court where there is some competent and credible *Page 7 
evidence supporting the findings of fact and conclusions of law rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610, 615-16,614 N.E.2d 742.
 {¶ 14} In this case, Glenn testified that the agreement between he and James was that Glenn could remain on the premise as long as he liked. Glenn further testified that the price of the property was discounted more than fifty percent and that the reason for the discount was because of the reservation of the life estate. The parties stipulated that the property was worth $150,000.00 and the sale price paid by James was $68,500.00. Another factor which supports Glenn's theory by inference is that James consented to Glenn living in the house — rent-free — from the date of the closing, August 1, 2003 to the date of James' death, March 28, 2005, a period of twenty months.
 {¶ 15} Glenn also testified that he had made over $4,000.00 worth of improvements and submitted the bills to support that statement. Improvements which were made after the closing included installation of a new hot water heater, a new water softener, a new refrigerator, and plumbing throughout the house. Glenn also called four individuals who had had conversations with James to whom James admitted that Glenn could stay on the premises as long as he liked; some testified to "the rest of his life."
 {¶ 16} The Estate denied that there was any such agreement by providing admissions by Glenn. First, Glenn admitted that he did not raise the alleged life *Page 8 
estate at the time of the closing or at any time after the death of James until the eviction hearing in the Bellefontaine Municipal court. The eviction action was scheduled for June 2, 2005, twenty-two months after the closing. Second, the contract did not have any date for possession, although the loan officer had asked about the date of possession. The testimony was that both James and Glenn were present when this was done and the loan officer testified in this case that James said, "He was not in any hurry." If ever there was a time for Glenn to speak up and say it is part of our agreement that I stay there as long as I live, the trial court stated that this was the time.
 {¶ 17} After Glenn produced several witnesses who had conversations with James, the Estate countered with James' sister and several other of his contemporaries. They testified to various possession dates being after deer season, after mushroom season, but never did James tell them that Glenn would be there for the rest of his natural life.
 {¶ 18} The Estate also presented a brief video tape during a visit of Marge Hays to the premises at issue in this case. Marge testified that she asked James for a tour of the premises in the spring of 2004 and he told her that she was free to visit the premises and Glenn could show her around. Marge, Friday (James' father), Almeda (James' mother) and Glenn toured the property and while they were touring Friday videotaped the tour. On the video admitted into evidence, *Page 9 
Marge asked Glenn when he intended to move or where he intended to go and he replied that he didn't know. The trial court stated that if there was an agreement between James and Glenn that would have been another time when Glenn should have mentioned it. Finally, there was testimony indicating that at one point after James' death, Glenn had been presented with a written lease by the estate. However, rather than speaking up about a life estate, Glenn apparently held the lease and marked comments on certain provisions, all of which could have been construed in support of the trial court's decision.
 {¶ 19} The trial court concluded upon review of the record that Glenn did not meet his burden to be entitled to reformation of the deed. Though the trial court found it to be tragic that Glenn had discounted his property over $80,000.00, the trial court also found that Glenn was reckless and even vindictive towards his children. The trial court further stated that given Glenn's attitude it was not surprising that Glenn did not do what a prudent man would do and spend a small percentage of the value of the property to hire an attorney to guarantee that his legal rights under the agreement were protected. Therefore, the trial court found that Glenn did not come to the court with clean hands because in the court's opinion, he failed to be prudent and candid about the alleged life estate.
 {¶ 20} Despite the controverted evidence in the record on these issues, we cannot say that the determination and judgment of the trial court are not supported *Page 10 
by clear and convincing evidence, or that the judgment of the trial court constituted an abuse of discretion. Therefore, for the foregoing reasons, Glenn's sole assignment of error is overruled, and the judgment of the Court of Common Pleas of Logan County is affirmed.
Judgment affirmed.
 ROGERS, P.J., and PRESTON, J., concur. *Page 1