BERARDI ET AL., APPELLEES, *v.* OHIO TURNPIKE COMM. ET AL.,
APPELLANTS.  (Three cases.)

[Cite as Berardi v. Turnpike Comm., 1 Ohio App. 2d 365.]

(Nos. 26989, 26990 and 26997—Decided February 25, 1965.)

*Messrs. Manchester, Bennett, Powers & Ullman* and *Messrs.
Baker, Hostetler & Patterson,* for appellees.

*Mr. Lockwood Thompson* and *Mr. James C. McGrath,* for
appellant Turnpike Commission.

*Messrs. McAfee, Hanning, Newcomer, Hazlett & Wheeler,
Mr. William D. Keast* and *Mr. Michael C. Clements,* for appellant Marvan W. Davis.

CORRIGAN, J.  This is an appeal on questions of law and fact
taken by the Ohio Turnpike Commission from a judgment rendered by the Court of Common Pleas granting reformation of a
deed conveying land to the state of Ohio.  Defendants, Marvin
W. Davis, who was made a party defendant upon motion to
intervene, and the state of Ohio have taken separate appeals
which have been consolidated for purposes of argument.

The cases come to trial *de novo* before us upon the petition of plaintiffs, Libera Berardi and Penn Ohio Plaza, Inc., the latter having been substituted as party plaintiff in this court pursuant to its purchase at a sheriff's sale of property formerly belonging to plaintiff, Midway Service Centers, Inc. Through their petition plaintiffs seek a decree of reformation of a deed to real estate from their predecessors in title, Jessie M. Rowe and Harry J. Rowe, to the state of Ohio. It is alleged, *inter alia*, that the Rowes entered into an agreement with the Turnpike Commission for the sale of a portion of their land, and the agreement provided that "* * * owner shall have the right to establish driveways as necessary for ingress and egress"; that through mutual mistake the above condition was not incorporated in the deed; and that the deed omitted any reference thereto. Plaintiffs ask for a decree reforming the deed from the Rowes to the state of Ohio to provide for access rights as provided in the contract of purchase. To this the state of Ohio and the Turnpike Commission filed answers. The Turnpike Commission's answer claims that the provisions in the contract were personal to the Rowes, denies that a mutual mistake was made, and prays for declaratory judgment in this regard. Defendant Davis makes essentially the same claim.

The facts are basically uncontroverted and are as follows:

Upon construction of the Ohio Turnpike, the Turnpike Commission determined to take a certain parcel of land located in Mahoning County, which was in part needed for a ramp at an intersection where such ramp connects with State Route Seven. The parcel fronted on the westerly side of Route Seven for approximately one hundred seventy three feet and varied in width from eighty eight to ninety nine feet. This piece of land in question was a small part of a larger parcel owned and occupied by Jessie M. Rowe and Harry J. Rowe; however, it was the only property through which they had access to Route Seven.

The Rowes were assisted in their negotiations with the Turnpike Commission by their adult son, Jack Rowe. During such negotiations the Rowes insisted upon unlimited access to their property, that no fences should be erected on their remaining frontage, and that they have the right to erect signs on their property. These demands were channeled to an at-

torney on the staff of the commission's land agents, one E. A. Kordick. Kordick visited the Rowes and agreed with them to have the following language inserted in the Turnpike Commission's standard form of purchase agreement entitled "Offer and Contract for the Sale of Real Estate" in order to establish the grantors' right of access:

"It is a condition of this contract that no fence shall be erected across the owners' remaining frontage on Market St. and owner shall have the right to establish driveways as necessary for ingress and egress."

The foregoing language was inserted on the form, and the form was then duly signed by the Rowes and witnessed by Kordick and Jack Rowe. The form, as amended, was also approved by the Turnpike Commission. The consideration specified was $3,180.

Thereafter, a deed was prepared by the commission on its standard form and forwarded to the representative of the commission who had originally negotiated with the Rowes, who observed that the deed did not contain the clause containing the access rights as agreed upon, and he so informed Kordick. Kordick then called the Rowes on the telephone in the representative's presence and told them that although the deed did not contain the access-rights clause as provided for in the contract, the commission was nevertheless bound by the contract and would honor it. The representative of the Turnpike Commission then proceeded to the Rowe residence and obtained their signatures on the deed.

Thereafter, the Rowes were permitted free access to their property by the Turnpike Commission. During construction of the turnpike existing ramp, a wide driveway to the Rowe property was built by the contractor. Fill dirt was moved upon the Rowe property, which raised the level of the property and facilitated ingress and egress. A permanent type of drainage tile was used by the contractor under the driveway. The driveway extended along the frontage of the Rowe property for some distance. The Rowes proceeded to open a small restaurant on the property and rented the rear of the property for storage of vehicles.

In 1961, L. P. Berardi acquired the Rowe property and adjoining lands. Thereafter, he conveyed the Rowe property

to Midway Service Centers, Inc., one of the original plaintiffs herein. This corporation's stock was held by Berardi and his wife. On three occasions permits were obtained from the Director of Highways to construct an access driveway to traverse the parcel taken by the state from the former Rowe property. After the permits were issued, Midway Service Centers, Inc., constructed a large service station, motel and garage complex on its land. The only means of ingress and egress to plaintiffs' land from Route Seven is by way of the driveway over the former Rowe property. The Turnpike Commission in no way interfered with the construction of the complex by the original plaintiffs or the use of the access driveway by the original plaintiffs' customers.

However, Marvan W. Davis, one of the defendants herein, filed a taxpayer's suit in the Court of Common Pleas of Franklin County for a declaratory judgment, seeking to have the permit issued by the Director of Highways declared illegal and to prohibit the use of the driveway for ingress and egress. Thereafter, this proceeding was commenced.

There is no question that equity will allow reformation of a written instrument for the erroneous omission of a material provision so that the instrument will evince the actual intention of the parties. In *M'Louth* v. *Rathbone*, 19 Ohio 21, it is stated at page 24:

"* * * Now it is the peculiar duty of courts of equity to relieve against and correct mistakes in deeds and other instruments of writing, and to give them the same effect they would have had, had there been no mistake. * * *."

See, also, *Clayton* v. *Freet*, 10 Ohio St. 544; *Barnes* v. *Christy*, 102 Ohio St. 160; and *May* v. *Ohio Turnpike Comm.*, 172 Ohio St. 555.

Likewise, in 47 Ohio Jurisprudence 2d 148, Reformation of Instruments, Section 22, it is stated:

"The omission or inclusion of a material stipulation or provision in an instrument, by mutual mistake and contrary to the intention of the parties, or by fraud and therefore contrary to the intention of the party deceived, may be remedied by the reformation of the instrument. Also, a conveyance may be reformed if by mistake words are omitted or inserted by

which is passed a greater or smaller estate than was agreed upon.''

Defendants contend that the rights of the Rowes in their contract with the Turnpike Commission were personal to them and not for the benefit of subsequent owners of the parcel. The contract provided by the Turnpike Commission contained the following sentence:

''* * * This contract shall be binding upon seller and seller's heirs, executors, administrators, successors, and assigns, and shall inure to the benefit of the commission, its successors and assigns.''

We can discern no evidence in the record other than that which clearly and convincingly shows that the parties to the contract intended that the access rights called for therein were to be a charge upon the land and thereby create a covenant running with the land.

Moreover, the first paragraph of the syllabus in *Johnson* v. *American Gas Co.*, 8 Ohio App. 124, provides:

''The use of the words 'assigns' or 'heirs and assigns' is not necessary or essential to create a covenant running with the land, and in determining whether a covenant will run with the land the material inquiries are whether the parties intended to impose such burden on the land and whether it is one that may be imposed consistently with principle and equity.''

We do not believe the doctrine of merger is applicable in the instant case. See *Berry* v. *Cleveland Trust Co.*, 53 Ohio App. 425, wherein it is stated, at page 431:

''It is definitely settled in Ohio that a written agreement between the grantor and the grantee for the conveyance of real estate is not executed by and merged in the deed as to the stipulations to be performed by the grantee; that, while the agreement to convey is performed by the execution and delivery of the deed conveying whatever was, by the terms of the contract, to be conveyed, it does not execute any of the stipulations of the grantee as to the consideration to be paid for the property; and that the agreement as to matters other than mere conveyance is not thus performed or satisfied. The deed is to be considered as a part of the transaction, in connection with, and not to the exclusion of, the contract between them; that is, both

the deed and the contract are parts of one transaction, and the rights of the parties must be determined by the terms of the whole contract. * * *'' (Citing cases.)

We find that there is clear and convincing evidence in the record to show that there was a mutual mistake, this being the failure to embody the provision above quoted from the contract in the deed from the Rowes to the state of Ohio.

It is also quite clear that equity will allow the reformation of a written instrument not only as between the original parties but also as to parties in privity with them.

Since it is clear that one in privity with an original party to a written instrument may rightly bring an action in equity for reformation of such original instrument, the issue for this court to consider is whether a purchaser at a sheriff's sale is in "privity" with the original owner. Upon argument on the merits before this court, counsel for the Turnpike Commission made an oral motion for judgment on the pleadings. This motion was predicated on the proposition that the substituted party plaintiff, Penn Ohio Plaza, Inc., being a purchaser at sheriff's sale, is not in privity with the original plaintiffs and their successors in title and consequently not entitled to reformation of the deed to the property in question. If we find that the purchaser at the sheriff's sale is in "privity" with the original owners, there can be no question as to the substituted party plaintiff's right to have the deed in question reformed.

Privity is defined by Black's Law Dictionary as the "mutual or successive relationship to the same rights of property." In *Rawson* v. *Brosnan*, 187 Ga. 624, 1 S. E. 2d 423, it was held:

"* * * in its broadest sense privity 'denotes mutual or successive relationship to the same right of property' * * *. Persons are in privity, not with property, but with persons as related to the same right in the same property."

In other words, one who is in privity with another because of the transfer of property "stands in the same shoes" as to the rights of the prior owner in the same property, thereby giving the subsequent owner the same rights and obligation as the original owner had in regard to the property. Among these rights is the right to reformation of a deed if the necessary elements are present, that is, fraud, error, omission or mutual

mistake. In 47 Ohio Jurisprudence 2d 153, Reformation of Instruments, Section 25, we find the following:

"In a case where the other requisites for the reformation of an instrument are present, either party to a written contract may have a mutual mistake corrected, and the remedy is also available, under certain circumstances, to or against persons claiming under the original parties and in privity with them. * * *"

In 45 American Jurisprudence 622, Reformation of Instruments, Section 64, it is stated:

"* * * Generally, however, the action [reformation] may be brought by a real party in interest claiming privity with a party to the instrument, such as a grantee, an assignee, *a purchaser at an execution, judicial or foreclosure sale.* * * *" (Emphasis ours.)

Furthermore, in *Strayer* v. *Johnson*, 110 Pa. 21, 1 A. 222, although the facts concern a treasurer's sale, some *obiter dictum* in that case, at page 24, bears on the question here:

"* * * *Privies* are those whose relationship to the same right of property is mutual or successive. In other words, privity denotes mutual or successive relationship to the right of property, title or estate. * * *. A purchaser at sheriff's sale, for example, is in privity to the defendant's title; * * *."

In 33 Corpus Juris Secundum 567, Executions, Section 284, it is written:

"In so far as the rights of a purchaser at an execution sale are concerned, a sale on an execution against a judgment debtor has the same force and effect as a voluntary conveyance by the debtor; and the purchaser bears the same relationship to the debtor that he would bear if he were the purchaser under a voluntary conveyance. * * *"

See, also, *In re Pierce's Estate*, 28 Cal. App. 2d 8, 81 P. 2d 1037; and *Frum* v. *Kueny*, 201 Iowa 327, 207 N. W. 372. Defendants cite several authorities wherein it is pointed out that there is no "privity" between the original owner of a piece of property and subsequent purchasers at a sale for the payment of taxes. The defendants liken this to the purchaser at a sheriff's sale. However, we are of the opinion that the title obtained by a purchaser at the sale of property for delinquent

taxes differs substantially from the title obtained in foreclosure sale for the benefit of creditors.

In 51 Ohio Jurisprudence 2d 639, Taxation, Section 495, it is stated:

"A valid tax title based upon a sale of forfeited lands extinguishes all previous titles, legal or equitable. * * * cutting off all possible interest and claims to the land sold and originating a new and independent title, valid in the receiver of the deed against all possible claims to or in the land.

"A tax title is a new and independent title, and has its source in the state, which alone may impose restrictions and exceptions qualifying the title invested in the purchaser. * * *

"* * *

"The Code provides that the purchaser of forfeited lands at a tax sale shall be regarded as the assignee of the state, and that when a tract has been forfeited to the state for nonpayment of taxes sold by the auditor, the conveyance by him extinguishes all previous title and invests the purchaser with a new and perfect title, free from all liens and encumbrances, * * *."

At no time in a foreclosure sale does title vest in the sheriff. The title remains in the original owner until vested directly in the purchaser through such sale.

We find that the evidence is clear and convincing that plaintiff Penn Ohio Plaza, Inc., by taking title through a sheriff's deed upon foreclosure sale is in privity with its predecessors in title and therefore entitled to reformation.

Defendant Turnpike Commission raises the question that if reformation should lie, it should be limited to the use of the former Rowe property. The commission contends that the use of the easement should be constrained to the former Rowe property or the dominant estate and any use from other contiguous parcels would substantially burden the servient estate or the property deeded to the state of Ohio from the Rowes. This court fully subscribes to the summary of law as set forth in 28 Corpus Juris Secundum 772, Easements, Section 92, as follows:

"An easement can be used only in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other property which he may then own or afterward

acquire, unless so provided in the instrument by which the easement is created, and the fact that such property is within the same inclosure as the lot to which the easement is appurtenant makes no difference in the application of the rule. Accordingly, a right of way cannot be used by the owner of the dominant tenement to pass to other land or premises adjacent to or beyond that to which the easement is appurtenant, * * *.''

However, we have reviewed the pleadings in this case and do not find this issue raised by the pleadings.

We also find no merit in the claim of laches urged by defendant Marvan W. Davis.

Accordingly, the defendant's motion for judgment on the pleadings is overruled. Decree in each case is hereby rendered for the plaintiffs, and it is ordered and decreed in each case that the deed from Jessie M. Rowe and Harry J. Rowe to the commission in the name of the state of Ohio, executed July 3, 1953, and recorded in Volume 707, page 139 of Mahoning County Deed Records, be reformed so as to correctly embody the agreement and understanding of the parties as to rights of ingress and egress as set forth in the written contract of sale dated June 23, 1953, and upon reformation thereof that plaintiffs possess and enjoy the ingress and egress fixed as the driveway as necessary authorized by permit issued by the Director of Highways on August 20, 1962.

It is further ordered that the cross-petition of the defendant Marvan W. Davis be, and the same hereby is, dismissed in each case at the costs of the defendant Marvan W. Davis.

It is further ordered that the cross-petition of the defendant Ohio Turnpike Commission in each case be, and the same is, hereby dismissed.

Journal entries will be prepared in accordance with this opinion.

The cause is remanded to the Common Pleas Court for execution of this judgment.

*Judgment accordingly.*

Silbert, P. J., and Wasserman, J., concur.