**WELLS FARGO BANK MINNESOTA, National Association, Appellant,**

v.

**MOWERY, Admr., et al., Appellees.**

[Cite as *Wells Fargo v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 09CA3300.

Decided April 5, 2010.

Reimer, Lorber & Arnovitz Co., L.P.A., and Dennis Reimer, for appellant.

Law Office of Stanley C. Bender and Stanley C. Bender, for appellees.

KLINE, Judge.

{¶ 1} Wells Fargo Bank Minnesota, National Association ("Wells Fargo"), as trustee under the Pooling and Servicing Agreement Dated as of February 28, 2001, Series 2001–A, appeals the judgment of the Scioto County Court of Common Pleas. Wells Fargo filed its complaint because of alleged mistakes in two separate transactions. The first mistake occurred during the transfer of real property between Wilma McClurg ("Wilma") and Joe McClurg Sr. ("Joe Senior"). And the second mistake occurred when Wilma took out a mortgage on the property she received from Joe Senior. Wells Fargo acquired the mortgage note from the original mortgagee. Sometime later, the mortgage went into default. After obtaining a judgment of foreclosure, Wells Fargo discovered that the mortgage was actually on a vacant lot. Wells Fargo had assumed that the mortgage was on a residential property. This discovery prompted Wells Fargo to seek equitable relief, which the trial court denied.

{¶ 2} On appeal, Wells Fargo initially contends that the trial court erred in finding that there was no privity between Wilma and Wells Fargo. Because it is irrelevant to our resolution of this appeal, we decline to address Wells Fargo's privity argument. Next, Wells Fargo contends that the trial court should have issued an order transferring certain real property to Wilma's estate. Because Wells Fargo's arguments have no basis in the established rules of equity, and because the trial court acted within its discretion, we disagree. Finally, Wells Fargo contends that the trial court erred in not reforming the mortgage as Wells Fargo requested. We disagree. The original mortgagee was inexcusably negligent during the mortgage transaction. Therefore, the mortgage cannot be reformed under the doctrine of mutual mistake. Accordingly, we affirm the judgment of the trial court.

I

{¶ 3} The facts in this case are not in dispute. Wilma and Joe Senior were married in 1954. As husband and wife, they owned two adjoining pieces of

property. The marital residence was situated on one piece of property, and the other piece of property was an undeveloped vacant lot. During their marriage, Wilma and Joe Senior produced three children: Carolyn Sue Mowery ("Carolyn"), Joe McClurg Jr. ("Joe Junior"), and Mark McClurg ("Mark").

{¶ 4} Wilma and Joe were divorced in 1986. As part of the divorce settlement, Joe Senior was supposed to quitclaim his interest in the residential parcel to Wilma. In turn, Joe Senior was to receive the undeveloped parcel. Somehow, the transfers were reversed; that is, Wilma received a deed to the undeveloped parcel, and Joe Senior received a deed to the residential parcel. Both deeds were recorded in the county recorder's office shortly after the divorce. Even though Wilma received the deed to the undeveloped parcel, she continued to live on the residential parcel until her death.

{¶ 5} In 1998, Wilma took out an $87,700 mortgage from an entity known as The Money Store, which no longer exists. The mortgage includes, as Exhibit A, the legal description for the undeveloped parcel. Thus, Wilma secured a mortgage on the property that she actually owned—that being the undeveloped parcel—but both Wilma and The Money Store apparently believed that the mortgage applied to the residential parcel. There is no evidence that The Money Store ever performed a survey prior to the closing of the mortgage. However, an appraisal was done, and the appraisal included information about the house on the residential parcel.

{¶ 6} Wells Fargo subsequently acquired the mortgage note from The Money Store, and Wilma continued to make payments on the mortgage until her death. Wells Fargo did not order a survey of the mortgaged property before acquiring the mortgage note.

{¶ 7} Joe Senior died intestate in 2003, and Carolyn was appointed the administrator of Joe Senior's estate. Pursuant to the laws of intestacy, Joe Senior's interest in the residential parcel passed to his children. As a result, Carolyn, Joe Junior, and Mark each obtained an undivided one-third interest in the residential parcel.

{¶ 8} Wilma died intestate in 2005, and Carolyn was appointed the administrator of Wilma's estate. Soon after Wilma's death, the mortgage went into default. This prompted Wells Fargo to file a foreclosure action. After Wells Fargo obtained a judgment of foreclosure, a sheriff's sale was ordered. Before the sale was to take place, a sheriff's deputy visited the foreclosed property and discovered that the property was, in fact, a vacant lot. The sheriff's office then notified Wells Fargo of this development.

{¶ 9} In January 2008, Wells Fargo ordered a survey of the foreclosed property. The survey confirmed that the property was, indeed, the undeveloped

parcel. Upon learning the results of the survey, Wells Fargo canceled the sheriff's sale and initiated the present case.

{¶ 10} Wells Fargo filed this action as a complaint for declaratory judgment. In its complaint, Wells Fargo claimed that a mutual mistake of fact occurred when Joe Senior received the residential parcel and Wilma received the undeveloped parcel. As a result, Wells Fargo asked the trial court to order the county auditor and county recorder to transfer the residential parcel to Wilma's estate and the undeveloped parcel to Joe Senior's estate. Additionally, Wells Fargo sought to reform the mortgage so that the mortgage would represent a first and best lien upon the residential parcel.

{¶ 11} On March 12, 2009, the trial court held a hearing where the parties essentially agreed on the facts. Subsequently, both parties filed trial briefs outlining their legal arguments.

{¶ 12} The trial court rejected Wells Fargo's claims and found the following: "[W]ith respect to the quitclaim deeds between Joe [Senior] and Wilma, only Joe [Senior] or Wilma or their successors in interests can seek reformation. A stranger to these contracts such as Wells Fargo has no legal relationship to the contracts and no standing to seek reformation in equity. There must be a privity of contract between Wells Fargo and Joe and Wilma to assert the right to reform the deeds.

{¶ 13} "Furthermore, neither Wells Fargo nor The Money Store ever had any privity relationship with either Joe [Senior] or Wilma and neither have any standing to 'reform' deeds issuing from the divorce action. With respect to the mortgage from Wilma to The Money Store, Joe [Senior] was never a signator to this mortgage.

{¶ 14} "The property owned by Joe [Senior] and his heirs cannot be substituted to a mortgage to secure a promissory note when neither Joe [Senior] nor his heirs were parties to the note or mortgage."

{¶ 15} Wells Fargo appeals and asserts the following four assignments of error: I. "The court erred in finding that there was no privity between Wilma McClurg and the appellant herein." II. "The court erred in not directing an order or judgment divesting title from the appellees to Wilma." III. "The court erred in not reforming the mortgage of the appellant." IV. "The court erred in dismissing the complaint of appellant."

## II

{¶ 16} For ease of analysis, we will start with a brief overview of the relevant issues. Wells Fargo bases its arguments on alleged mistakes in two different transactions. First, Wells Fargo argues that a mistake occurred because the

initial transactions did not comply with the terms of the divorce settlement. Joe Senior was supposed to transfer the residential parcel to Wilma, and Wilma was supposed to transfer the undeveloped parcel to Joe Senior. Instead, the opposite happened. We will refer to this alleged mistake as the "divorce mistake." Second, Wells Fargo contends that a mistake occurred during the mortgage process. That is, even though Wilma held title to the undeveloped parcel, and even though the mortgage describes the undeveloped parcel, both Wilma and The Money Store apparently believed that the mortgage actually applied to the residential parcel. We will refer to this alleged mistake as the "mortgage mistake."

## III

{¶ 17} In its first assignment of error, Wells Fargo contends that the trial court erred in finding that there was no privity between Wilma and Wells Fargo. The purpose of Wells Fargo's assignment of error is not entirely clear. Although the trial court found that there was no privity between Wells Fargo and Wilma, the lack-of-privity finding related only to the reformation of the quitclaim deeds. However, on appeal, Wells Fargo explicitly states, "[I]t is not the intention of the Appellant to reform a deed * * *."

{¶ 18} Furthermore, the trial court made no similar lack-of-privity finding in regard to the mortgage mistake. Instead, the trial court found that "Joe [Senior] and his heirs cannot be substituted to a mortgage to secure a promissory note when neither Joe [Senior] nor his heirs were parties to the note or mortgage." Based on this statement, Wilma's relationship to Wells Fargo played no part in the trial court's decision regarding the reformation of the mortgage.

{¶ 19} In our view, the trial court's privity finding does not affect any of Wells Fargo's arguments on appeal. Thus, we cannot discern the purpose of Wells Fargo's argument. Ultimately, because it is irrelevant to our resolution of this appeal, we decline to address Wells Fargo's first assignment of error. See App.R. 12(A)(1)(c).

## IV

{¶ 20} In its second assignment of error, Wells Fargo contends that the trial court should have transferred title in the residential parcel to Wilma's estate.

{¶ 21} Initially, Wells Fargo bases its argument on Civ.R. 70, which provides: "If a judgment directs a party to execute a conveyance of land, to transfer title or possession of personal property, to deliver deeds or other documents, or to perform any other specific act, and the party fails to comply within the time specified, the court may, where necessary, direct the act to be done at the cost of

the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party."

{¶ 22} However, Wells Fargo did not raise its Civ.R. 70 argument at the trial court. An "[a]ppellant cannot raise any new issues for the first time on appeal. The failure to raise an issue at the trial level waives it on appeal." *Gangale v. State Bur. of Motor Vehicles,* Franklin App. No. 01AP–1406, 2002-Ohio-2936, 2002 WL 1291818, at ¶ 58, citing *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, overruled on other grounds, *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272; *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640. See also *Adkins v. Bratcher,* Washington App. No. 07CA55, 2009-Ohio-42, 2009 WL 44822, at ¶ 39; *First Horizon Home Loan Corp. v. Roberts,* Cuyahoga App. No. 92367, 2010-Ohio-60, 2010 WL 117698, at ¶ 10; *Effective Shareholder Solutions, Inc. v. Natl. City Bank,* Hamilton App. Nos. C–080451 and C–090117, 2009-Ohio-6200, 2009 WL 4269869, at ¶ 18. Therefore, we will not address Wells Fargo's Civ.R. 70 argument. For the same reason, we will not address Wells Fargo's argument that the trial court should have enforced the divorce settlement as a prior court order. Wells Fargo did not make this argument at the trial court level, either.

{¶ 23} Wells Fargo also bases its second assignment of error on general notions of equity. "The standard of review applicable to claims for equitable relief is abuse of discretion." *McCarthy v. Lippitt,* 150 Ohio App.3d 367, 2002-Ohio-6435, 781 N.E.2d 1023, at ¶ 22, citing *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 274–275, 15 OBR 408, 473 N.E.2d 798. "Abuse of discretion" connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 24} Wells Fargo's arguments are not entirely clear. Generally, in situations like the divorce mistake, a party seeks reformation of the relevant deed (or deeds) based on the equitable doctrine of mutual mistake. "Reformation is an equitable remedy that allows a court to change the language in a contract where the parties' true intentions have not been expressed due to a 'mutual mistake'— meaning a common mistake by all the parties to the contract. A deed, in particular, may be reformed where words have been excluded from the deed that have resulted in the transfer of a greater or smaller estate than intended." (Citations omitted.) *Huber v. Knock,* Hamilton App. No. C–080071, 2008-Ohio-5900, 2008 WL 4891562, at ¶ 6.

{¶ 25} Here, however, Wells Fargo explicitly states, "It is not the intention of the Appellant to reform a deed but rather to obtain a court order to transfer the property which is manifestly set forth in a prior court order and which was the

intention of the parties." Nevertheless, Wells Fargo bases much of its argument on the intentions of Wilma and Joe Senior in relation to the divorce mistake. Therefore, it would appear as though Wells Fargo raises arguments related to mutual mistake but seeks a result other than reformation of the relevant deeds. Wells Fargo has cited no cases where, because of mutual mistake, a trial court has arrived at an equitable result other than reformation or rescission. See, generally, 13A Ohio Jurisprudence 3d 24, Cancellation and Reformation of Instruments ("Mutual mistake has long been recognized in equity as a ground for the cancellation or rescission of an instrument"). Instead, Wells Fargo argues that the trial court should have transferred the residential parcel to Wilma under general principles of equity.

{¶ 26} We believe that Wells Fargo has advanced this novel argument to avoid the privity requirements of the mutual-mistake doctrine. "Equity will permit the reformation of a written instrument not only as between the original parties but also as to parties in privity with them." *Mason v. Swartz* (1991), 76 Ohio App.3d 43, 49, 600 N.E.2d 1121, citing *Broadwell v. Phillips* (1876), 30 Ohio St. 255, 259; *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 370, 30 O.O.2d 385, 205 N.E.2d 23. For example, a successor in interest may bring an action to reform an instrument based on mutual mistake. *Mason* at 49. Here, the trial court found that "Wells Fargo has no legal relationship to the [divorce mistake] and no standing to seek reformation in equity." This finding probably accounts for Wells Fargo's statement that it does not seek reformation of the deeds. Instead, Wells Fargo has advanced an argument that does not require privity. However, we do not believe that Wells Fargo can circumvent longstanding rules of equity by appealing to general equitable principles. If Wells Fargo seeks to make arguments based on mutual mistake, we believe that Wells Fargo should be limited to the relief available under the mutual-mistake doctrine. By seeking relief other than reformation or rescission, Wells Fargo has advanced an argument that has no basis in the established rules of equity. At a very minimum, Wells Fargo has not demonstrated that the trial court abused its discretion.

{¶ 27} Therefore, the decision not to transfer the residential parcel to Wilma's estate was within the trial court's discretion. Despite Wells Fargo's invocation of general principles of equity, we find that the trial court's actions were not arbitrary, unreasonable, or unconscionable.

{¶ 28} Accordingly, we overrule Wells Fargo's second assignment of error.

V

{¶ 29} In its third assignment of error, Wells Fargo contends that the trial court erred in not reforming the mortgage to give Wells Fargo a first and best lien upon the residential parcel.

{¶ 30} "An appellate court shall not reverse a trial court's decision to grant or deny equitable relief such as reformation absent an abuse of discretion." *Crout v. D.E.R. Bldg. Co.* (Nov. 13, 2001), Brown App. No. CA2000–12–039, 2001 WL 1402734, citing *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274–275, 15 OBR 408, 473 N.E.2d 798; *Fifth Third Bank v. Simpson* (1999), 134 Ohio App.3d 71, 73, 730 N.E.2d 406.

{¶ 31} We discussed reformation in our resolution of Wells Fargo's second assignment of error. " 'The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof * * *.' *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 286 [31 O.O.2d 557], 209 N.E.2d 194. '[R]eformation of a contract is appropriate where the written agreement does not accurately reflect the true understanding of the parties, and it is used to effectuate their true intent.' *Concrete Wall Co. v. Brook Park* (Feb. 26, 1976), Cuyahoga App. Nos. 34054, 34090, and 34171 [1976 WL 190697], citing *Greenfield v. Aetna Cas. Ins. Co.* (1944), 75 Ohio App. 122 [30 O.O. 427], 61 N.E.2d 226. 'The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement.' *Concrete Wall Co.*

{¶ 32} "A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. See *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797, paragraph one of the syllabus; *Justarr Corp. v. Buckeye Union Ins. Co.* (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345. Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. See *In re Haynes* (1986), 25 Ohio St.3d 101, 104 [25 OBR 150], 495 N.E.2d 23." *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, at ¶ 13, quoting *Patton v. Ditmyer*, Athens App. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, 2006 WL 3896780, at ¶ 27–28.

{¶ 33} Here, the trial court declined to reform the mortgage because neither Joe Senior nor his heirs were parties to the mortgage. However, we believe the trial court misapplied the law. "Where a mortgage of real estate has been duly executed and recorded, a mistake in the attempted description of the mortgaged premises will be reformed or corrected in equity. * * * [A] mistake in the description of the property intended to be mortgaged will not be corrected as against third parties who part with value without notice of the mistake." 69 Ohio Jurisprudence 3d 88, Mortgages and Deeds of Trust, citing *German Natl. Bank v. Bode* (1902), 5 Ohio C.C.(N.S.) 30; *Youtz v. Julliard* (C.P.1888), 10 Ohio Dec.Rep. 298. See also *Guenther v. Downtown Mercury, Inc.* (1958), 105 Ohio App. 125, 129, 5 O.O.2d 413, 151 N.E.2d 749, quoting 76 Corpus Juris Secundum,

Reformation of Instruments, Section 58 (" 'An instrument may not be reformed as against a subsequent bona fide purchaser for value without notice' "); *In re Easter* (Bankr.Ct.S.D.Ohio 2007), 367 B.R. 608, 615 (stating that "the right of reformation cannot be invoked to abrogate the rights of an innocent intervening third party"), citing *Sullivan v. Doehler Die Casting Co.* (C.P.1945), 15 Ohio Supp. 122, 31 O.O. 28; 13A Ohio Jurisprudence 3d 87, Cancellation and Reformation of Instruments; cf. *Huber v. Knock,* Hamilton App. No. C–080071, 2008-Ohio-5900, 2008 WL 4891562, at ¶ 10 ("A reformed deed can not be enforced against a bona fide purchaser for value— i.e., an innocent third party— to that party's prejudice"). The trial court made no findings as to whether Joe Senior and his heirs are innocent third parties. Instead, the trial court found that the mortgage could not be reformed simply because Joe Senior and his heirs were not parties to the mortgage. However, in certain circumstances, a trial court may reform an instrument against the rights of third parties. See, e.g., *Huber* at ¶ 12. Thus, even though Joe Senior and his heirs were not parties to the mortgage, we believe the trial court's reasoning was correct only if Joe Senior and his heirs are not innocent third parties.

{¶ 34} We find that neither Joe Senior nor his heirs are innocent third parties. "For the intervening rights of a third person to be protected as those of an innocent purchaser, three requisites must be present: (1) he or she must be a purchaser; (2) he or she must have paid value; and (3) he or she must have no notice of the equity in favor of reformation." 13A Ohio Jurisprudence 3d 87, Cancellation and Reformation of Instruments, citing *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 19 OBR 63, 482 N.E.2d 946; *Hartman v. Tillett* (1948), 86 Ohio App. 20, 24, 40 O.O. 456, 89 N.E.2d 613. Joe Senior was not an innocent third party for two reasons. First, he did not pay value for the residential parcel. Instead, Joe Senior obtained the residential parcel (albeit mistakenly) as a result of the divorce settlement. Second, Joe Senior had notice of the divorce mistake. That is, Joe Senior knew that Wilma continued to live on and exercise control over the residential parcel. Because Joe Senior never acted as an owner of the residential parcel, reforming the mortgage against Joe Senior's interest would have placed him in no worse a position than he actually anticipated.

{¶ 35} Further, Carolyn, Joe Junior, and Mark are not innocent third parties because they do not meet any of the criteria for innocent purchasers. Instead, they obtained the residential parcel through the laws of intestacy. See *In re Estate of Dinsio,* 159 Ohio App.3d 98, 2004-Ohio-6036, 823 N.E.2d 43, at ¶ 18 (stating that "heirs who would stand to inherit property through intestate succession" are not bona fide purchasers for value); *Noltemeyer v. Hamilton* (Aug. 2, 1994), Franklin App. No. 94APE01–67, 1994 WL 409790. Moreover, Carolyn, Joe Junior, and Mark had notice of the equity in favor of reformation.

They obtained the residential parcel after Joe Senior's death in 2003. However, Wilma continued to live on and exercise control over the residential parcel until her death in 2005. Therefore, Carolyn, Joe Junior, and Mark also had notice of the divorce mistake.

{¶ 36} Therefore, we believe the trial court mistakenly concluded that it could not reform the mortgage, because Joe Senior and his heirs were not parties to the mortgage. Nevertheless, "it is the definitely established law of this state that where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 58 N.E.2d 658. Here, we find that the trial court's judgment is correct because The Money Store was inexcusably negligent as to the mortgage mistake.

{¶ 37} "Although the term 'mistake' implies fault in the party to whom the mistake is imputed, the mere fact that a mistake was made in an instrument does not bar the right of reformation of a contract. * * * Mistakes rarely occur in the absence of some form of negligence by a party or an agent of the party. * * * Therefore, it is not essential that the party seeking the reformation of a contract show that he is wholly free from fault. * * * Negligence that is mere inadvertence or excusable does not preclude reformation of a contract to conform to the intention of the parties." *Crout*, 2001 WL 1402734, at *5, citing *Hartman*, 86 Ohio App. at 23, 89 N.E.2d 613; *Greenfield v. Aetna Cas. & Sur. Co.* (1944), 75 Ohio App. 122, 130, 30 O.O. 427, 61 N.E.2d 226; *Foley v. Lipka* (Nov. 3, 1988), Highland App. No. 673, 1988 WL 118701. See also *Davis v. Cassady* (Mar. 23, 1987), Ross App. No. 1303, 1987 WL 8438. Conversely, negligence that is *not* excusable must preclude the reformation of an instrument. Cf. *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, 861 N.E.2d 605, at ¶ 14 (citing *Hartman*, 86 Ohio App. 20, 40 O.O. 456, 89 N.E.2d 613, and discussing inexcusable negligence as it relates to rescission).

{¶ 38} In relation to the mortgage mistake, we find that The Money Store's negligence was not excusable. The mortgage included the legal description of the undeveloped parcel, and The Money Store was in the mortgage business. Therefore, it was not excusable for The Money Store to have believed the mortgage actually applied to any property other than the undeveloped parcel. A sheriff's deputy discovered that the undeveloped parcel is a vacant lot simply by visiting the property. Had The Money Store undertaken even a cursory amount of due diligence, it would have discovered the true nature of the undeveloped parcel. A mortgage company's failure to learn the most basic facts about a mortgaged property cannot be excusable negligence.

{¶ 39} As the assignee of the mortgage, Wells Fargo stands in the shoes of The Money Store. *EMC Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, at ¶ 20; *Cleveland Trust Co. v. Elbrecht* (1940), 137 Ohio St. 358, 360, 19 O.O. 55, 30 N.E.2d 433. Thus, Wells Fargo cannot have a greater right to reform the mortgage than The Money Store had. See *W. Broad Chiropractic v. Am. Family Ins.,* Franklin App. No. 07AP–721, 2008-Ohio-2647, 2008 WL 2246653, at ¶ 15, citing *Citizens Fed. Bank, F.S.B. v. Brickler* (1996), 114 Ohio App.3d 401, 410, 683 N.E.2d 358. And because The Money Store's own inexcusable negligence would have precluded their reformation of the mortgage, Wells Fargo may not seek reformation of the mortgage as The Money's Store's assignee.

{¶ 40} Therefore, we find that the trial court's judgment is correct even though the trial court reached its judgment for incorrect reasons. By choosing not to reform the mortgage as Wells Fargo requested, the trial court acted within its discretion. The mortgage may not be reformed because, in relation to the mortgage mistake, The Money Store's negligence was not excusable. We understand that Carolyn, Joe Junior, and Mark will receive the residential parcel free and clear. However, Wells Fargo has a foreclosure judgment on the undeveloped parcel, and Wells Fargo may still proceed with a sheriff's sale of the undeveloped parcel. Thus, the situation is not entirely inequitable because (1) Carolyn, Joe Junior, and Mark will lose their rights to the undeveloped parcel and (2) Wells Fargo will receive funds from the sale of that property. Certainly, Wells Fargo had expected to foreclose upon a residential property, and the sale of a vacant lot will probably net Wells Fargo less than it had originally anticipated. Nevertheless, a party is not entitled to equitable relief simply because of a bad bargain. See *Proctor v. Proctor* (1997), 122 Ohio App.3d 56, 59, 701 N.E.2d 36. And here, Wells Fargo purchased a bad deal from The Money Store.

{¶ 41} Accordingly, for the foregoing reasons, we overrule Wells Fargo's third assignment of error.

## VI

{¶ 42} In its fourth assignment of error, Wells Fargo contends the following: "For the reasons set forth above in the prior assignments of error the court should not have dismissed the complaint of Appellant." Here, we overrule Wells Fargo's fourth assignment of error for the same reasons we overruled Wells Fargo's second and third assignments of error.

{¶ 43} Having overruled Wells Fargo's second, third, and fourth assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

HARSHA and ABELE, JJ., concur.