[Cite as *Brown v. Ward*, 2019-Ohio-4848.]

BrownCOURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| THOMAS R. BROWN | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 19CA000011 |
| PHYLLIS L. WARD, et al. | |
| | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                            Pleas, Case No.  17CV000601


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     November 25, 2019


APPEARANCES:

For Plaintiff-Appellant               For Defendants-Appellees

DANIEL P. CORCORAN                    SCOTT D. EICKELBERGER
ADAM J. SCHWENDEMAN                   RYAN H. LINN
THEISEN BROCK                         KINCAID, TAYLOR & GEYER
424 Second Street                     50 N. Fourth Street, P. O. Box 1030
Marietta, Ohio  45750                 Zanesville, Ohio  43702-1030

*Wise, J.*

{¶1} Plaintiff-Appellant Thomas R. Brown appeals the decision of the Guernsey County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees Phyllis Ward, Jon Brown, Megan Brown and Sam Brown.

## STATEMENT OF THE FACTS AND CASE

{¶2} The relevant facts and procedural history are as follows:

{¶3} Plaintiff-Appellant Thomas Brown and Defendant-Appellee Phyllis Ward were divorced in December, 2016, following a forty (40) year marriage. For more than 20 years prior to the divorce, Appellant and Appellee Ward had jointly owned and lived on the real property located at 17900 Burson Road, Lore City, Ohio, 43755.

{¶4} The divorce became extremely contentious within the family and resulted in a rift between Appellant and his children, including Jonathan Brown and his wife Megan Brown, and Samuel Brown (the "Brown Appellees"). (Aff. Brown at ¶4). During the course of the divorce proceedings Appellant was held in contempt of court on more than one occasion and was arrested several times as a result of those contempt applications. (Aff. Brown at ¶6; Aff. Donahue- Angler at ¶3).

{¶5} One of the principal points of contention within the divorce was the disposition of the Marital Property. Appellee Ward wanted to sell the property to their children, the Brown Appellees. (Aff. Donahue-Angler at ¶4). Following some negotiations, Appellant and Appellee Ward agreed to sell the property to the Brown Appellees provided Appellant could retain and reserve his one-half (1/2) interest in the sub-surface minerals underlying the property. (Aff. Brown at ¶9; Aff. Donahue-Angler at ¶4).

**{¶6}** On November 9, 2016, Ward and Appellant appeared, represented by counsel, at a hearing before a magistrate. (Aff. Brown at ¶10; Aff. Donahue-Angler at ¶5). At the hearing, both Appellee Ward and Appellant expressed, through counsel, the terms of this verbal separation agreement, which was read into the record of the court and which they indicated they had entered into freely and voluntarily with the assistance of counsel, and which they believed to be fair and equitable. (Aff. Brown at ¶11; Aff. Donahue-Angler at ¶6). The court found the parties' separation agreement to be fair and equitable, approved it, and entered the decree that same day. (Aff. Brown at ¶12; Aff. Donahue-Angler at ¶7). Under the terms of the divorce decree, the parties agreed to sell the property to their adult children, Jon and Sam Brown, reserving unto themselves each a ½ interest in the mineral rights.

**{¶7}** The deed conveying the marital property, and the other closing documents to complete the court-approved sale, were prepared by Moorehead Law Offices in Zanesville, Ohio. (Aff. Brown at ¶14). In January 2017, Appellant was contacted by a representative from Moorehead Law Offices requesting that he come to the office in order to execute the closing documents to complete the sale of the real estate. (Aff. Brown at ¶15). Appellee Ward attended the closing separate from Appellant and signed the Deed and other closing documents.

**{¶8}** On January 13, 2017, Appellant first went to the Moorehead Law Offices but he refused to sign the Deed and the other closing documents because he was concerned that the Deed did not contain a reservation of mineral rights consistent with the court approved agreement and sale. (Aff. Brown at ¶16). According to Appellant, the

representatives from Moorehead Law Offices were irritated that he refused to sign the documents they had prepared. (Aff. Brown at ¶17).

{¶9}   Appellant returned to the Moorehead Law Offices a second time on January 17, 2017, and this time, upon the suggestion of a friend, he took a copy of the divorce decree with him to show to the people at Moorehead Law Office. (Aff. Brown at ¶18; Aff. Rominger at ¶3). According to Appellant, during this second visit, Mr. Moorehead assured him that everything was fine, and that he should sign the closing documents, including the Deed.   (Aff. Brown at ¶19). Appellant states that he repeatedly expressed to the people at Moorehead Law Offices that he wanted to reserve his mineral rights in the Marital Property. Appellant again refused to sign the documents as he was still concerned about whether the Deed included a reservation of his mineral rights. At that time a representative from Moorehead Law Offices told Appellant that if he refused to sign, Ms. Ward's attorney might file a motion for contempt. (Aff. Brown at ¶20).

{¶10}  On January 18, 2017, Atty. Donahue-Angler, Appellant's divorce counsel, received an e-mail from Attorney Church stating that Appellant was refusing to sign closing documents and requesting that she call Appellant or Amy at Moorehead Law Offices in Zanesville. (Aff. Donahue-Angler, ¶16-17). At some point, either in a phone call or by text, Attorney Church told Atty. Donahue-Angler that she intended to file a motion for contempt against Appellant for not signing the Deed conveying the Marital Property. (Aff. Donahue-Angler at ¶18).

{¶11}  According to Atty. Donahue-Angler, she informed Appellant that since the divorce decree said that the mineral rights were reserved, there was no reason why the deed would not be consistent with the decree. (Aff. Donahue-Angler at ¶20). She also

told Appellant that if he refused to cooperate in selling the Marital Property, consistent with the terms of the divorce decree, that he could be held in contempt of court. (Aff. Donahue-Angler at ¶20). Appellant has the same recollection of their conversation. (Aff. Brown at ¶21)

{¶12} Appellant returned to the Moorehead Law Offices a third time and signed the closing documents, including the Deed. (Aff. Brown at ¶21).

{¶13} On September 16, 2017, Appellant entered into a contract to sell his one-half (1/2) mineral interest in the Marital Property. (Aff. Brown at ¶22). After signing the contract, Appellant learned that he could not sell his one-half (1/2) interest in the minerals because they had not been reserved in the Deed. (Aff. Brown at ¶23).

{¶14} On October 27, 2017, Appellant filed a Complaint seeking reformation and/or rescission of the January 13, 2017, deed due to mutual mistake, duress, and/or fraud. Appellant also asserted a claim against Appellees for conversion.

{¶15} On December 29, 2017, Appellees served their answer to Appellant's Complaint

{¶16} On January 18, 2019, Appellees filed a Motion for Summary Judgment asking the trial court to dismiss Appellant's claims with prejudice. Appellees submitted the Affidavits of Appellee Jonathan Brown, Appellee Phyllis Ward, and Derek Moorehead in support of their motion.

{¶17} On February 15, 2019, Appellant filed a Memorandum in Opposition to Appellees' Motion for Summary Judgment, supplemented by the affidavits of Appellant, Atty. Lindsey K. Donahue-Angler, and Larry Rominger.

**{¶18}** On March 1, 2019, Appellees filed their Reply in support of their Motion for Summary Judgment. In addition to the various affidavits submitted by the parties, the deposition transcripts of Derek Moorehead and Amy Wilson, and a second affidavit of Atty. Lindsey K. Donahue-Angler were also filed and in the record.

**{¶19}** The trial court held a non-oral hearing on the parties' motions.

**{¶20}** On April 1, 2019, the trial court issued an entry granting Appellees' Motion for Summary Judgment.

**{¶21}** Appellant now appeals, assigning the following error for review:

### ASSIGNMENT OF ERROR

**{¶22}** "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS'-APPELLEES' MOTION FOR SUMMARY JUDGMENT."

### Summary Judgment Standard

**{¶23}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that

reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶24}  Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶25}  It is based upon this standard that we review Appellant's Assignment of Error.

## I.

{¶26}  In his sole assignment of error, Appellant challenges the trial court judgment entry granting summary judgment in favor of Appellees on Appellant's complaint. We disagree.

{¶27}  As a general principle of construction, a deed is to be construed most strongly against the grantor in the resolution of any ambiguities contained in the

instrument; however, a deed's language is conclusively presumed to express the parties' intention absent "uncertainty" in the language employed. Ohio Real Estate Law and Practice, *supra,* Section T15.06(B), at 298. If a grantee accepts a deed, the knowledge of its provisions is legally imputed to him; and, by its acceptance, he is bound by all of its provisions and is estopped to deny their legal effect. 35 Ohio Jurisprudence 3d (1982) 290, 291–292, Deeds, Section 58.

{¶28} The doctrine of "merger by deed" holds that whenever a deed is delivered and accepted "without qualification" pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exists. The purchaser is limited to the express covenants of the deed only, unless the elements of fraud or mistake are involved or unless the deed was accepted under protest and with a reservation of rights. *See*, generally, 80 Ohio Jurisprudence 3d (1988) 91, 93, Real Property Sales and Exchanges, Sections 58–59; *Brumbaugh v. Chapman* (1887), 45 Ohio St. 368, 13 N.E. 584; *Fuller v. Drenberg* (1965), 3 Ohio St.2d 109, 32 O.O.2d 91, 209 N.E.2d 417, paragraph one of the syllabus. Cf. *Dillahunty v. Keystone Savings Assn.* (1973), 36 Ohio App.2d 135, 65 O.O.2d 157, 303 N.E.2d 750, *Suermondt v. Lowe* (2006), 165 Ohio App.3d 427 (5th Dist.).

{¶29} In *Suermondt, supra,* this Court quoted *Newman v. Group On,* 2005-Ohio-1582 , which states:

> In reality, this doctrine is merely an application of the contract doctrine of integration. Under this doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the final contract are part of the agreement. This doctrine is the

combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties. Thus, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed. (14 Powell on Real Property (1995) 81A-136, Section 81A.07(1)(d)).

**{¶30}** Thus, a proper delivery and acceptance of a deed extinguishes any obligations of a prior agreement to the extent that the agreement touches upon the real property which is the subject of the deed. McDermott's Ohio Real Property (1990) at 319. Exceptions to the rule are made in cases of fraud, mistake, or collateral agreements not intended by the parties to be incorporated into the deed. *Id.* at 320. Rescission of instruments of conveyance, generally, may also be had only where there is duress, undue influence, or, when there is bad faith, want or failure of consideration. McDermott's Ohio Real Property, *supra,* at 299.

### *Reformation*

**{¶31}** "[R]eformation" is defined as the remedy afforded by courts possessing equitable jurisdiction to the parties and the privies of parties, to written instruments which import a legal obligation to reform or rectify such instruments whenever they fail, through fraud or mutual mistake, to express the real agreement or intention of the parties. *Greenfield v. Aetna Cas. & Sur. Co.*, 75 Ohio App. 122, 127-128, 61 N.E.2d 226 (12th Dist. 1944).

*Mutual Mistake*

**{¶32}** A court may reform the language in a contract where the parties' true intentions have not been expressed due to a 'mutual mistake' - meaning a common mistake by all the parties to the contract. *In re Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). The party wishing to reform the deed must demonstrate the 'mutual mistake' by clear and convincing evidence. *See Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797, paragraph one of the syllabus.

**{¶33}** Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. *Id*.

**{¶34}** In the instant matter, the evidence submitted by Appellant in opposition to Appellees' motion for summary judgment did not demonstrate a question of fact supporting mutual mistake. A "mutual mistake" means " 'a common mistake by all the parties to the contract.' " *Wells Fargo Bank Minnesota v. Mowery*, 187 Ohio App.3d 268, 2010-Ohio-1650, 931 N.E.2d 1121, ¶ 24 (4th Dist. 2010), quoting *Huber v. Knock*, 1st Dist. Hamilton No. C-080071, 2008-Ohio-5900, 2008 WL 4891562, ¶ 6.

**{¶35}** Here, the record reflects that appellant and Appellee each signed the real estate purchase agreement, the disclosure forms and the deed, all of which were consistent with one another and all of which transferred their entire interests in the property, including the mineral rights. The affidavit of Jon Brown stated that he and his brother, the purchasers in this case, intended to purchase the entire interest in the real property. Likewise, Phyllis Ward's affidavit stated that it was her intent to convey the entire

estate. Further, Appellant signed the warranty deed voluntarily, after conferring with counsel.

**{¶36}** For these reasons, we find that the trial court properly determined that Appellant was not entitled to reformation based on a mutual mistake.

*Fraud*

**{¶37}** The elements of fraud are, "(a) a representation, or where there is a duty to disclose, concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment and (f) a resulting injury proximately caused by the reliance." *Burr v. Bd. of Cnty. Com'rs of Stark Cnty.* (1986), 23 Ohio St.3d 69, paragraph two of the syllabus, 491 N.E.2d 1101.

**{¶38}** Upon review, we find that Appellant has failed to show concealment, false statements or misrepresentations in this matter.

**{¶39}** Here, the language in both the contract and deed is clear and unambiguous. As stated above, all of the closing documents were consistent with purchase agreement and the disclosure forms. Appellant had the opportunity to inspect the deed through a simple pre-closing inspection of the deed and did in fact delay signing the deed until after he had an opportunity to confer with counsel. Appellant signed the deed in this form. Once the deed was accepted by Appellees, Appellant became bound by the terms of the deed. The fraud exception to the application of the doctrine of merger by deed cited by Appellant is not applicable to these facts. See *Reid v. Sycks* (1875), 27 Ohio St. 285, and *McGovern Builders, Inc. v. Davis* (1983), 12 Ohio App.3d 153, 12 OBR 477, 468 N.E.2d 90.

<u>*Duress*</u>

**{¶40}** Finally, Appellant argues an exception to the Merger by Deed Doctrine based on duress.

**{¶41}** The Ohio Supreme Court considered the issue of coercion in avoidance of contract in *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990):

> To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party.

**{¶42}** *Id.* at syllabus.

**{¶43}** The *Blodgett* court further held that to prove duress, the party seeking to avoid the contract must establish

> (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities. * * *" (Emphasis added.) (Citations omitted.)

**{¶44}** *Id.* at 246.

**{¶45}** Appellant herein argues that he signed the deed in this case "because of a threat that he was going to be arrested and held in contempt of Court." (Appellant's brief at 20).

**{¶46}** Upon review of the record, we find that Appellant and Appellees appeared at different times for the real estate closing. Deposition testimony from the notary present at the closing supports the position that Appellant signed the deed voluntarily, without any undue or outside influence from Appellees and that he did not appear to be in a state of fear or apprehension while so doing. (Depo. of Amy Wilson at 54-56).

**{¶47}** Further, Appellant consulted with counsel prior to executing the deed. If Appellant believed the deed to be in contravention with the prior agreement, he could have refused to sign same. Instead, he chose to sign the deed as drafted. As such, we find Appellant has failed to make a case for duress in this case.

**{¶48}** Consequently, on the issue of the land transfer, there is no genuine issue of material fact, and Appellees were entitled to judgment as a matter of law. Civ.R. 56. Therefore, the trial court properly granted partial summary judgment pursuant to the rule. Accordingly, Appellants' sole assignment of error is not well-taken.

**{¶49}** For the foregoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 1120